■ RONALD SPACE, II, et al., Appellants, v FARM FAMILY MUTUAL INSURANCE COMPANY, Respondent. [652 NYS2d 357] —Mercure, J. Appeal from an order of the Supreme Court (Rumsey, J.), entered April 3, 1996 in Tompkins County, which, *inter alia*, granted defendant's cross motion for summary judgment dismissing the complaint.

At all times relevant to this appeal, plaintiffs operated a family farm in the Town of Groton, Tompkins County. During the period December 1, 1992 through December 1, 1993, plaintiffs had in effect a policy of liability insurance (hereinafter the policy) issued by defendant, which provided coverage for property damage and personal injury. In 1994, neighboring landowners, John LaVigne and Carol LaVigne, commenced an action against plaintiffs to recover for the alleged contamination of the LaVignes' well by liquified cow manure that plaintiffs had applied to their land as fertilizer. Following timely notice, defendant disclaimed coverage on the basis of the policy's pollution exclusion. As a result, plaintiffs brought this action for a declaration that defendant was required to defend and indemnify them in the underlying action. Follow-

ing joinder of issue, plaintiffs moved and defendant cross-moved for summary judgment. Finding that damage resulting from the application of manure to cropland fell within the policy's pollution exclusion, Supreme Court granted defendant's cross motion and dismissed the complaint. Plaintiffs appeal and we now affirm.

The subject pollution exclusion provides that the policy's bodily injury and property damage liability coverage does not apply to:

"BODILY INJURY or PROPERTY DAMAGE arising out of the *discharge, dispersal*, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, *waste materials* or other irritants, *contaminants* or *pollutants* into or upon land, the atmosphere or any watercourse or body of water; however, this exclusion does not apply to:

"(a) CROP DAMAGE resulting from the accidental above ground contact with herbicides, pesticides, fungicides and fertilizers caused by the application of the same to an insured PREMISES which results in actual damages within one GROWING SEASON of said application; or

"b) BCDILY INJURY resulting from the accidental above ground contact with herbicides, pesticides, fungicides and fertilizers caused by the application of the same to an insured PREMISES which results in medical treatment within one year (365 days) of said application" (emphasis supplied).

Simply stated, plaintiffs' position is that a natural organic fertilizer that has been purposely and beneficially applied to cropland is not a substance identified in or covered by the policy's pollution exclusion. We disagree. Although plaintiffs may be correct in their contention that liquid manure is not a "pollutant" or "contaminant" when properly applied (and confined) to cropland, we are not persuaded that the characterization of the substance need be rigidly controlled by the time and place of its initial discharge or application. To the contrary, the subsequent leachate of intentionally deposited waste materials has been held to fall within a similar pollution exclusion (*see, County of Columbia v Continental Ins. Co.*, 83 NY2d 618). In our view, liquid manure is properly classified as a "waste material", "pollutant" or "contaminant" when, as is alleged in the underlying action, the substance has leached into the groundwater and contaminated a well on adjoining property (*see, Concerned Area Residents for Envt. v Southview Farm*, 34 F3d 114, *cert denied* 514 US 1082 [liquid manure classified as "pollutant" under Clean Water Act]; *Weber v IMT Ins. Co.*, 462 NW2d 283 [Iowa] [hog manure discharged onto road

falls within policy exclusion for damage caused by "waste material"]).

We are also unpersuaded that the identification and marketing of the policy as a "special farm package" would prevent "ordinary businessmen in the farming community" from understanding that damages resulting from the application of manure to cropland may be excluded from coverage under the policy. To the contrary, the exclusion's express limitation concerning damages resulting from "accidental above ground contact with herbicides, pesticides, fungicides and fertilizers caused by the application of the same to an insured premises" compels the conclusion that other damages arising out of the application of fertilizers will fall within the exclusion. As correctly reasoned by Supreme Court, plaintiffs' interpretation of the policy's exclusion would render this limitation meaningless.

In view of the foregoing, we conclude that Supreme Court did not err in its legal determination that the subject pollution exclusion, in clear and unmistakable language and subject to no other reasonable interpretation, applies in this case (*see, Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652; *cf., Incorporated Vil. of Cedarhurst v Hanover Ins. Co.*, 223 AD2d 528, *mod* 89 NY2d 293 [four-Judge majority of the Court of Appeals based its holding on an interpretation that the complaints in the underlying actions against the Village did not specifically allege that the claimed injuries were "pollution-related", thereby avoiding consideration of the question of whether the pollution exclusion clauses in the Village's policies were ambiguous with respect to whether raw sewage is a pollutant]).

Cardona, P. J., Casey, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.