206

[742 NYS2d 332]

BELT PAINTING CORP., Appellant, v TIG INSURANCE COMPANY, Respondent.

Second Department, May 13, 2002

**APPEARANCES OF COUNSEL**

*Hagan, Coury & Associates,* Brooklyn (*Paul Golden* of counsel), for appellant.

*Morrison, Mahoney & Miller, LLP,* New York City (*Erik Drewniak* and *Arthur J. Liederman* of counsel), for respondent.

**OPINION OF THE COURT**

PRUDENTI, P.J.

Whether the terms of the absolute pollution exclusion contained in certain contracts of insurance, including the one now under review in this case, should be applied literally so as to exclude coverage even in those cases where the "environment," as that term is commonly understood, is unaffected by anything which could realistically be defined as "pollution," is a question which has given rise to extensive litigation. Those courts which have considered this issue have arrived at contrasting conclusions. On this appeal, in accordance with our reading of the decision of the Court of Appeals in *Westview Assoc. v Guaranty Natl. Ins. Co.* (95 NY2d 334), we hold that the absolute pollution exclusion contained in the policy under review does not apply so as to exclude coverage in the case of a claimant allegedly injured as the result of the temporary indoor dissemination of paint or paint solvent fumes.

The injured plaintiff in the underlying personal injury action, Joseph Cinquemani, alleges that Belt Painting Corp. (hereinafter Belt), the plaintiff in the present action, is liable to him, and to his wife and coplaintiff, Maria Cinquemani, because of the injuries which he sustained as a result of his inhalation of "noxious and toxic fumes." On April 26, 1997, Cinquemani allegedly inhaled paint or paint solvent fumes which were produced by Belt's workers during the course of its performance of a subcontract to strip existing paint and repaint certain office space located at Financial Square, 33 Old Slip, New York, N.Y., where Mr. Cinquemani worked.

Belt was covered by a commercial general liability policy issued by the defendant TIG Insurance Company (hereinafter TIG) for the period from June 1, 1996, to July 1, 1997, and it demanded that TIG defend and indemnify it in connection with the Cinquemani action. By letter dated November 9, 1999, TIG denied coverage on the basis of the "total pollution exclusion endorsement" contained in the policy. The present action for declaratory and injunctive relief was commenced on or about June 16, 2000.

By notice of motion dated August 17, 2000, TIG sought summary judgment dismissing Belt's complaint, arguing that it was not obligated to defend or indemnify Belt in connection with the underlying action based on the terms of the "total pollution exclusion endorsement" contained in the relevant policy. TIG relied on various cases, including *A-One Oil v Massachusetts Bay Ins. Co.* (250 AD2d 633), *White v Freedman*

(227 AD2d 470), and *Demakos v Travelers Ins. Co.* (205 AD2d 731). Belt moved for summary judgment in its favor, arguing that the pollution exclusion does not apply. Belt relied on *Continental Cas. Co. v Rapid-American Corp.* (80 NY2d 640), and *Karroll v Atomergic Chemetals Corp.* (194 AD2d 715), among other cases, and argued that the cases relied upon by TIG, including those noted above, were distinguishable.

The Supreme Court granted TIG's motion, and denied Belt's cross motion. In its order, the Supreme Court stated, "While it may be true that the endorsement applies only to environmental or industrial pollution, it has been held that indoor air contamination, such as in the instant case, can constitute environmental pollution," citing *A-One Oil v Massachusetts Bay Ins. Co.* (250 AD2d 633, *supra*), *American Heritage Realty Partnership v LaVoy* (209 AD2d 749), and *Demakos v Travelers Ins. Co.* (205 AD2d 731, *supra*). Although the cases relied upon by the Supreme Court do support the proposition for which they are cited, we believe that subsequent case law, including, most importantly, the decision of the Court of Appeals in *Westview Assoc. v Guaranty Natl. Ins. Co.* (95 NY2d 334, *supra*), point to a different result. We therefore reverse.

Exclusionary provisions in insurance contracts are, in general, to be "accorded a strict and narrow construction" (*Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 311, citing *Taylor v United States Cas. Co.,* 269 NY 360, 363; *Griffey v New York Cent. Ins. Co.,* 100 NY 417, 421; *Rann v Home Ins. Co.,* 59 NY 387, 389; *see Incorporated Vil. of Cedarhurst v Hanover Ins. Co.,* 89 NY2d 293, 298-299; *Gaetan v Firemen's Ins. Co. of Newark,* 264 AD2d 806). In *Incorporated Vil. of Cedarhurst v Hanover Ins. Co.* (89 NY2d 293, 298-299, *supra*), the Court of Appeals stated that "pollution exclusions do not apply when the complaint does not allege that the discharge complained of actually results in pollution" (citing *Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 74). In this case, although the Cinquemani complaint alleges that personal injuries resulted from the emission of toxic fumes in combination with other factors such as inadequate ventilation, it does not allege that Belt's activities resulted in anything which would ordinarily be described as "pollution."

The pollution exclusion under review in this case is the type of exclusion which, in numerous cases which have arisen in various jurisdictions, has been described as an "absolute," or "total" pollution exclusion, as opposed to a "qualified" exclusion, that is, one containing an exception for "sudden and ac-

cidental" discharges (*see e.g. Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 89 NY2d 621; *see also American Heritage Realty Partnership v LaVoy,* 209 AD2d 749, *supra*; *Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y. v General Acc. Ins. Co. of Am.,* 275 AD2d 90; *Bechtel Petroleum Operations, Inc. v Continental Ins. Co.,* 96 Cal App 4th 571, 117 Cal Rptr 2d 399). It excludes coverage in cases of bodily injury "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time." The term "pollutant" is then defined to include "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste."

In *Westview Assoc. v Guaranty Natl. Ins. Co.* (95 NY2d 334, *supra*), the Court of Appeals reviewed the similarly-worded provision of an umbrella policy, in which the term "pollutants" was defined as " 'smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal "Pollutants," and all other irritants and "Contaminants." ' " (id. at 340). The Court of Appeals held that this exclusion, which by its literal terms would seem to apply to injuries resulting from exposure to "all irritants" and "all contaminants," did not apply to exclude coverage in a case where the infant plaintiff in the underlying action claimed to have been injured as the result of the ingestion of lead paint, an injury which was incurred indoors. This holding is consistent with prior decisions of this Court holding that the pollution exclusions under review did not apply to eliminate coverage in cases involving ingestion of lead paint (*see e.g. Cepeda v Varveris,* 234 AD2d 497; *GA Ins. Co. of N.Y. v Naimberg Realty Assoc.,* 233 AD2d 363).

The *Westview* decision represents a signal that New York will not adhere to a completely literal approach in connection with the application of absolute pollution exclusions, an approach which has been persuasively criticized in several other jurisdictions (*see e.g. American States Ins. Co. v Kiger,* 662 NE2d 945, 948-949 [Ind] [applied literally, exclusion would bar coverage in case of injury caused by slip and fall on grease spill]), and which previously has been rejected by this Court as well, in favor of the view that such exclusions should apply only in cases of "environmental pollution" (*see Karroll v Atomergic Chemetals Corp.,* 194 AD2d 715, *supra*, citing *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640, *supra; see also Stoney Run Co. v Prudential-LMI Commercial Ins. Co.,*

47 F3d 34 [2d Cir] [New York law]; *Republic Franklin Ins. Co. v L&J Realty Corp.*, 280 AD2d 351 [1st Dept]; *Cepeda v Varveris*, 234 AD2d 497, *supra; GA Ins. Co. of N.Y. v Naimberg Realty Assoc.*, 233 AD2d 363; *Miano v Hehn*, 206 AD2d 957 [4th Dept]).

In *Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y. v General Acc. Ins. Co. of Am.* (275 AD2d 90, *supra*), the Appellate Division, Fourth Department also rejected a literal construction of an absolute pollution exclusion which would have led to the denial of coverage in a case factually similar to the case now under review. In *Roofers' Joint Training (supra)*, the Fourth Department held that an exclusion which was, in relevant part, identical to the one now under review, did not apply in the case of a person claiming to have been injured as a result of the inhalation of toxic fumes which had been released when a roofing membrane was applied with a hot air gun during a classroom demonstration at the insured's premises. Acknowledging that various state and federal courts had "split on this issue," the Fourth Department held that the better view was that this type of exclusion "applies only to environmental pollution, and not to all contact with substances that can be classified as pollutants" (*id.* at 93, quoting *Stoney Run Co. v Prudential-LMI Commercial Ins. Co.*, 47 F3d 34, 38 [2d Cir], *supra*, citing *Nautilus Ins. Co. v Jabar*, 188 F3d 27 [1st Cir] [Maine law]; *Meridian Mut. Ins. Co. v Kellman*, 197 F3d 1178 [6th Cir] [Michigan law]; *see also Bituminous Cas. Corp. v Advanced Adhesive Tech., Inc.*, 73 F3d 335 [11th Cir] [Georgia law]; *Minerva Enters., Inc. v Bituminous Cas. Corp.*, 312 Ark 128, 851 SW2d 403).

To the extent that other decisions of this Court, including those relied upon by the Supreme Court in this case, support a contrary result (*see A-One Oil v Massachusetts Bay Ins. Co.*, 250 AD2d 633, *supra; White v Freedman*, 227 AD2d 470, *supra; Demakos v Travelers Ins. Co.*, 205 AD2d 731, *supra*), we believe that they are no longer valid in light of the Court of Appeals decision in *Westview (supra)*. We are persuaded that the common-sense construction of the terms of the absolute pollution exclusion reflected in the *Westview* case (*supra*) and in *Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y. v General Acc. Ins. Co. of Am.* (275 AD2d 90, *supra*) is preferable to the literal approach reflected in the earlier cases.

Of course, the exclusion under review in this case, as well as the qualified pollution exclusion (those subject to the "sudden and accidental" exception) still may be properly applied in those cases where the damages alleged are truly environmental

in nature, or where the underlying complaint alleges damages resulting from what can accurately be described as the pollution of the environment (*see e.g. Town of Harrison v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 89 NY2d 308 [claim based on property damage due to dumping of waste on claimants' property]; *Incorporated Vil. of Cedarhurst v Hanover Ins. Co.,* 89 NY2d 293, *supra* [claims for property damage and personal injuries asserted by village residents based on floods caused by discharges from village sewer system]; *see also Schenectady Intl. v Employers Ins. of Wausau,* 245 AD2d 754; *Cannon Constr. Co. v Liberty Mut. Ins. Co.,* 227 AD2d 364 [insured sought indemnification for cleanup costs incurred after liquid asphalt applied to nearby roads dispersed into Manhasset Creek]).

For the foregoing reasons, the order and judgment (one paper) appealed from is reversed, the defendant's motion for summary judgment is denied, the plaintiff's cross motion for summary judgment is granted, and it is declared that the defendant is obligated to defend and indemnify the plaintiff in connection with the underlying action.

O'BRIEN, FRIEDMANN and MCGINITY, JJ., concur.

Ordered that the order and judgment is reversed, on the law, with costs, the defendant's motion for summary judgment is denied, and the plaintiff's cross motion for summary judgment is granted; and it is further,

Adjudged and declared that the defendant is obligated to defend and indemnify the plaintiff in connection with the underlying personal injury action.